BURWICK LAW PLLC || WOLF POPPER LLP

January 12, 2026

**VIA ECF**
The Honorable Ann M. Donnelly
United States District Court
Eastern District of New York
225 Cadman Plaza East
Courtroom 4GN
Brooklyn, New York 11201

      Re: *In re $HAWK Token Securities Litigation,* No. 1:24-cv-08650-AMD-JRC (E.D.N.Y.) This Document Relates To: ALL ACTIONS

Dear Judge Donnelly:

      Plaintiffs respectfully submit this letter in response to Defendant Alex Larson Schultz's January 2, 2026 pre-motion conference request (ECF No. 47), in which he seeks leave to move to dismiss the First Amended Class Action Complaint ("FAC")[1] under Rule 12(b)(6) and, in the alternative, invites the Court to decline supplemental jurisdiction over the state-law claims. Plaintiffs oppose the anticipated motion. This letter is not intended to and does not waive any arguments in support of the FAC.

      Schultz argues that Plaintiffs' Securities Act claims fail because HAWK is not a "security" and, was marketed as an "expression of support" for Ms. Welch rather than a speculative financial instrument. This contradicts the FAC's detailed allegations and applications of the familiar *Howey* framework to digital assets. *See, e.g.*, *SEC v. Ripple Labs, Inc.*, 2023 WL 4507900 (S.D.N.Y. July 13, 2023); *SEC v. Terraform Labs Pte. Ltd.*, 684 F. Supp. 3d 170 (S.D.N.Y. 2023); *SEC v. Coinbase, Inc.*, No. 23-cv-4738 (S.D.N.Y. Mar. 26, 2024); *SEC v. Telegram Grp. Inc.*, 448 F. Supp. 3d 352 (S.D.N.Y. 2020). These cases hold that the controlling question is not defendant's label, but whether the economic reality satisfies the elements of an investment contract.

      The FAC adequately pleads each *Howey* element: (1) investment of money—Plaintiffs purchased HAWK with fiat currency and cryptocurrency, FAC ¶ 545; (2) common enterprise—Plaintiffs' fortunes were tied to Defendants' success through pooled proceeds and shared liquidity, FAC ¶¶ 545–546; (3) reasonable expectation of profits—based on Defendants' own statements and conduct, including promises of podcast integration, gaming and "play-to-earn" functionality, token-gated subscription tiers, and other utilities touted as value drivers, FAC ¶¶ 84–95, 547; (4) profits derived from other's efforts—Defendants controlled tokenomics, marketing, liquidity, platform integrations, and all development of promised utilities, FAC ¶¶ 131–183, 548.

      Schultz's assertion that meme coins categorically are not securities mischaracterizes the SEC's position. The SEC Division of Corporation Finance's Staff Statement on Meme Coins

---

[1] *In re $HAWK Token Sec. Litig.*, No. 1:24-cv-08650-AMD-JRC, ECF No. 37 (E.D.N.Y. Dec. 18, 2025).

(February 27, 2025)[2] explicitly carves out exceptions, stating it "does not extend to the offer and sale of meme coins that are inconsistent with the descriptions set forth above, or products that are labeled 'meme coins' in an effort to evade the application of the federal securities laws by disguising a product that otherwise would constitute a security." It requires case-by-case analysis "of the specific facts relating to the meme coin and the manner in which it is offered and sold," including an "evaluat[ion] of the economic realities of the particular transaction." *Id*. at n.4. The HAWK tokens fall squarely within the Statement's recognized exceptions: the FAC alleges pooled funds and a common enterprise in which Plaintiffs' fortunes were tied to Defendants' promotional success (FAC ¶¶ 545-546), reasonable expectations of profits from promised utilities (FAC ¶¶ 84-94, 547), and Defendants' managerial and entrepreneurial control over tokenomics, marketing, liquidity, platform integrations, and development (FAC ¶¶ 4, 118-125, 548). *See Id*. at n 9.

Defendant So's admissions further establish HAWK as a security. In a December 5, 2024 Twitter Space, So stated holders would be "decentralized shareholders in the common movement," and "mutual beneficiaries," and lawyers advised setting up the offshore Cayman Islands structure to avoid SEC regulations and selling of "unregulated securities to Americans." FAC ¶¶ 23, 109-110, 143. This establishes common enterprise and expectation of profits from promoter's efforts.

The July 18, 2024 Meme Token Creation and Monetization Agreement demonstrates HAWK was structured as a monetization vehicle not a "fan token." FAC ¶¶ 185–229. Executed months before launch between Memetic Labs and Ms. Welch's entity, 16 Minutes LLC., it committed Ms. Welch to broad, scripted promotional obligations; granted Memetic Labs full Twitter access; reserved a 50% lifetime profit share tied to trading revenue; and allocated funds for launch logistics and marketing, while allocating nothing for engineering or developing the promised utilities. *Id*. These allegations align closely with marketing-and-profit-sharing "schemes" courts have held to be securities. *See, e.g., Terraform*, 684 F. Supp. 3d at 186–93; *Ripple*, 2023 WL 4507900, at *9–*16; *Coinbase*, No. 23-cv-4738, slip op. at 31–44.

Schultz's suggestion that Plaintiffs admitted HAWK is a mere "expression of support" cherry-picks language while ignoring context. The FAC alleges that Defendants deliberately blurred fan expression and investment solicitation—marketing HAWK as participation in Ms. Welch's "movement" while promising durable utilities, locked liquidity, and "fair" tokenomics. FAC ¶¶ 70–77, 84–107. Courts reject such form-over-substance argument in the digital-asset context, examining the entire scheme and the totality of the communications to determine whether purchasers would reasonably expect profits from the promoter's efforts. *See, e.g., Ripple*, 2023 WL 4507900, at *9–*16; *Telegram*, 448 F. Supp. 3d at 365–79.

In addition, Schultz erroneously contends that the common-law fraud claim is deficient under Rule 9(b) and the PSLRA because the FAC "lumps" Defendants together. The FAC alleges Schultz owns Memetic Labs, which designed and executed HAWK's launch architecture; uses the "Doc Hollywood" and "Alexander Shultz" personas; hosted promotional Twitter Spaces where he made specific misrepresentations; signed and benefitted from the Monetization Agreement; and

---

[2] Available at https://www.sec.gov/newsroom/speeches-statements/staff-statement-meme-coins (the "SEC Staff Statement") (last visited January 12, 2026).

controlled Ms. Welch's Twitter for scripting posts. FAC ¶¶ 21, 50, 131–139, 185–229. It further alleges Schultz, through Memetic Labs, coordinated with overHere and Tuah The Moon Foundation on allowlists and distribution; designed tokenomics that placed only approximately 3.3% of supply into public liquidity while allocating roughly 17% to insider wallets without lockups; and moved extracted proceeds off-chain. FAC ¶¶ 64–77, 101–107, 240–261, 445–446.

The FAC pleads fraud with particularity. From mid-November 2024 through December 4, 2024, Schultz (and his co-defendants) represented via Twitter, Discord, podcasts, and the Meteora interface that HAWK's liquidity was "permanently locked," that distribution would be "fair" and "community-driven," and utilities were under development or imminent. FAC ¶¶ 64–77, 84–104, 240–244. The FAC explains why these statements were knowingly false: no engineering budget or technical milestones in the Monetization Agreement, no code repositories or contracts for utilities, near-immediate liquidity removal, and thin public float with concentrated insider holdings. FAC ¶¶ 96–107, 119–124, 240–261, 474. Such documentary and circumstantial allegations suffice to plead falsity and scienter. *See, e.g., E. Öhman J:or Fonder AB v. NVIDIA Corp.*, 81 F.4th 918, 929–38 (9th Cir. 2023) (scienter adequately pled from internal data and economic incentives); *In re Finjan Holdings, Inc. Sec. Litig.*, 58 F.4th 1048, 1056 (9th Cir. 2023). The FAC also pleads the required New York nexus and injury for GBL 349 and 350 claims—alleging that deceptive conduct occurred in part in New York, and New York consumers purchased $HAWK and were injured by buying at inflated prices. FAC ¶¶ 18, 27–28, 583–585.

Schultz's assertion that he is "mentioned only once" in the fraud count elevates form over substance. Courts evaluate the complaint as a whole; the FAC incorporates detailed allegations tying Schultz, through Memetic Labs, to the misstatements, omissions, and deceptive scheme.

The FAC further alleges Defendants formed express/implied contracts with purchasers through tokenomics publications, launch announcements/marketing, and SAFT-style agreements. It pleads breach based on failure to deliver promised utilities/liquidity/fair distribution and exerting control to extract profits and destroy token value, causing damages. FAC ¶¶ 594‑597.

The FAC also alleges Schultz (and Memetic) was unjustly enriched by profits tied to fraudulent trading activity. FAC ¶¶ 21, 188‑190, 602. It pleads equity requires restitution because enrichment was obtained through the deceptive scheme. FAC ¶¶ 598‑604.

Finally, Schultz argues the Court should decline supplemental jurisdiction if Section 5 is dismissed. For the reasons above, Plaintiffs' Securities Act claim is well-pleaded. Regardless, the state law claims arise from the same nucleus of operative fact: the same Monetization Agreement, promotional campaign, tokenomics, liquidity events, and injury to purchasers. Judicial economy, consistency, and resource conservation favor retaining jurisdiction, particularly given the technical evidence involved. Federal courts routinely exercise supplemental jurisdiction over such claims in digital asset cases. *See, e.g., Terraform*, at 176–77; *Coinbase*, at 4–6.

Plaintiffs will address Schultz's arguments more fully in formal briefing should Defendant's motion for leave be granted. Given the alignment between the FAC and recent digital-asset authorities, the proposed motion lacks merit and should be denied in its entirety.

Honorable Ann M. Donnelly
January 12, 2026

Respectfully submitted,

**WOLF POPPER LLP**
*/s/ Chet B. Waldman*
Chet B. Waldman
845 3rd Avenue – 12th Floor
New York, NY 10022
212-759-4600
cwaldman@wolfpopper.com

**BURWICK LAW, PLLC**
*/s/ Luis Munoz*
Luis Munoz
Max Burwick*
1 World Trade Center, 84th Fl.
New York, NY 10007
luis@burwick.law
max@burwick.law

*Co-Lead Counsel for Plaintiffs and the Proposed Class*

**Admission Anticipated*