**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE $HAWK TOKEN SECURITIES LITIGATION<br><br><br>This Document Relates To:<br><br>ALL ACTIONS | **Case No.: 1:24-cv-08650-AMD-JRC**<br><br>**CLASS ACTION** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR ALTERNATIVE SERVICE AND EXTENSION OF TIME TO <u>SERVE DEFENDANT METEORA</u>**

i

**TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT.................................................................................................1

II.   STATEMENT OF FACTS ....................................................................................................3

   A.   DEFENDANT METEORA..............................................................................................3

   B.   PLAINTIFFS' SERVICE EFFORTS ...............................................................................5

III.  LEGAL STANDARD ...........................................................................................................6

   A.   THE STATUTORY CHAIN: FRCP 4(H)(1)(A) TO GENERAL ASSOCIATIONS LAW § 13 AND

   CPLR § 308(5) ...............................................................................................................6

   B.   CPLR SECTION 308(5) ..............................................................................................7

IV.   ARGUMENT ........................................................................................................................7

   A.   PLAINTIFFS ADEQUATELY ALLEGE CAPACITY ...................................................7

   B.   THIS COURT SHOULD AUTHORIZE ALTERNATIVE SERVICE ON DEFENDANT METEORA.........9

      1.   Conventional Service Is Impracticable..............................................................9

      2.   Plaintiffs' Proposed Methods Are Reasonably Calculated to Give Meteora Actual

      Notice .......................................................................................................................11

   C.   THE HAGUE CONVENTION DOES NOT APPLY .....................................................14

   D.   PLAINTIFFS' TIME TO SERVE DEFENDANT METEORA SHOULD BE EXTENDED......................15

V.    CONCLUSION....................................................................................................................16

**TABLE OF AUTHORITIES**

**CASES**

*Buon v. Spindler*,
    65 F.4th 64 (2d Cir. 2023) …………………………………………………...15

*Cargill Fin. Servs. Int'l, Inc. v. Barshchovskiy*,
    No. 24-CV-5751, 2024 WL 4240998 (S.D.N.Y. Sept. 19, 2024)…………………………...10

*CFTC v. Ooki DAO*,
    No. 3:22-cv-05416-WHO, 2022 WL 17822445 (N.D. Cal. Dec. 20, 2022) …………..……*passim*

*Dellone v. Coinbase, Inc.*,
    No. 1:23-CV-01408-ADA-HBK, 2023 WL 8646925 (E.D. Cal. Dec. 14, 2023) ……………13

*Doe v. Hyassat*,
    337 F.R.D. 12 (S.D.N.Y. 2020) …………………………………………………………...12

*Freeman Giuliani v. Giuliani*,
    No. 24-CV-06563 (LJL), 2024 WL 5054913 (S.D.N.Y. Dec. 10, 2024) …………………..7, 11

*Houghton v. Leshner*,
    No. 22-CV-07781-WHO, 2024 WL 5154071 (N.D. Cal. Nov. 25, 2024) …………………2, 8

*In re GLG Life Tech Corp. Sec. Litig.*,
    287 F.R.D. 262 (S.D.N.Y. 2012) …………………………………………………..*passim*

*Invar Intl., Inc. v. Zorlu Enerji Elektrik Uretim Anonim Sirketi*,
    86 A.D.3d 404 (1st Dep't 2011) …………………………………………………...12

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
    339 U.S. 306 (1950) ………………………………………………………...……...7, 11

*NYKCool A.B. v. Pac. Int'l Servs., Inc.*,
    No. 12-cv-5754 (LAK), 2015 WL 998455 (S.D.N.Y. Mar. 5, 2015) …………………………12

*Patel v. Clane Gessel Studio*,
    No. 1:22-CIV-10964-GHW-RFT, 2023 WL 8280498 (S.D.N.Y. Nov. 30, 2023) …………..…15

*Rio Properties, Inc. v. Rio Int'l Interlink*,
    284 F.3d 1007 (9th Cir. 2002) …………………………………………………...14

*Samuels v. Lido DAO*,
    No. 23-CV-06492-VC, 2024 WL 4231598 (N.D. Cal. June 27, 2024) ………………….……8, 14

*Samuels v. Lido DAO*,
    757 F. Supp. 3d 951 (N.D. Cal. 2024) ……………………………………………………2, 8

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,
    486 U.S. 694 (1988) …………………………………………………………….....7, 14

*Zobay v. MTN Grp. Ltd.*,
    No. 21 CIV. 3503 (CBA)(VMS) (E.D.N.Y. Mar. 6, 2025), ECF No. 208………………*passim*

**STATUTES AND RULES**

Securities Act of 1933……………………………………………………….……7
N.Y. General Associations Law § 13………………………………………………*passim*
N.Y. CPLR § 308(1), (2), (4), (5) …………………………………………...……*passim*
N.Y. CPLR § 1025……………………………………………………………...…7, 12
Fed. R. Civ. P. 4(e)(1) ………………………………………………….………………6
Fed. R. Civ. P. 4(h)(1)(A) …………………………………………………………….…6

Fed. R. Civ. P. 4(m) ……………………………………………………………...……15

Fed. R. Civ. P. 17(b)(3), (b)(3)(A)………… …………………………………………...……7

## I.    PRELIMINARY STATEMENT

Plaintiffs ask this Court to authorize alternative service on Defendant Meteora, an unincorporated association whose members, at a minimum, develop and profit from software deployed on the Solana blockchain. Meteora has named members. Meteora has a team of employees. Defendant Benjamin Chow ("Chow") directed Meteora's operations from New York as CEO. And Meteora's user fee revenue flows to Chow and, among others, Defendant Dynamic Labs Limited ("DLL"), a British Virgin Islands corporation whose directors include two of Meteora's co-founders. Despite operating in every respect as a revenue-generating financial company, Meteora maintains no registered agent, no physical address, and no appearing Defendant in this action has been willing to accept service on its behalf.

Meteora is an entity that can and should be served, as any entity is served when it faces serious allegations of fraud.

The only reason this motion is necessary is that counsel for appearing co-Defendants Chow and DLL refused Plaintiffs' request to accept service on Meteora's behalf, taking the position that the association through whose platform their clients collect US-sourced user fee revenue does not have the legal capacity to sue or be sued.

That position is foreclosed by settled law. Meteora is, at minimum, a software company like any other. That it deployed its software through a decentralized protocol does not immunize it from suit or service. *In Ooki DAO*, on the same motion before this Court, counsel tried to argue that suing a purportedly decentralized business was like trying to hold "the internet" liable. Judge Orrick's response: "I disagree."[1] Where, as here, an entity is structured so that no person or office accepts service on its behalf, that structure is not a defense to service; it is the reason courts

---

[1]  *CFTC v. Ooki DAO*, No. 3:22-cv-05416-WHO, 2022 WL 17822445 at 4* (N.D. Cal. Dec. 20, 2022).

authorize alternative means of achieving it. *See Houghton v. Leshner*, No. 22-CV-07781-WHO, 2024 WL 5154071, at *8 (N.D. Cal. Nov. 25, 2024).

In *Samuels*, Judge Chhabria rejected the identical "autonomous software" defense as "circular," cutting through the noise and identifying that allegations clearly concerned "actions of an entity run by people."[2] Venture capital co-defendants represented by Latham & Watkins and Skadden abstained from taking the "just software" position. As the court observed, they did not have "the audacity." *Id.* at 961. Meteora is an entirely typical candidate for service, even more so than the entities in those cases: the FAC identifies its members by name, details their operational roles, and two of them are already before this Court as appearing Defendants.

Plaintiffs' motion asks this Court to do what courts in this District and elsewhere have done: authorize alternative service on an unincorporated association that cannot practicably be served through conventional means.

Specifically, Plaintiffs propose to serve Meteora: (1) by emailing copies of the Summons, FAC, and this Court's Order to senzer@cahill.com (counsel for Defendant Chow, a member of Meteora) and cbrown@goodwinlaw.com (counsel for Defendant DLL, a member of Meteora), both of whom corresponded with Plaintiffs' counsel regarding service on Meteora as recently as March 11–12, 2026, confirming they maintain active communication with their clients (Decl. ¶¶ 6–8, Exs. A, B); (2) by emailing the same documents to meteora_support@meteora.ag, the notice address designated in Meteora's own Terms of Service (Decl. ¶ 10, Ex. C); and (3) by directing Defendant Chow, through his counsel at Cahill, to publish and pin the service documents on Meteora's governance forum at https://proposals.meteora.ag/ and on Meteora's public Discord server at discord.gg/meteora (Decl. ¶¶ 11–12, Exs. E–G). These methods are reasonably calculated

---

[2] *Samuels v. Lido DAO*, 757 F. Supp. 3d 951, 960-961 (N.D. Cal. 2024)

to provide actual notice and are consistent with the approaches approved in *Ooki DAO*, *Samuels*, *GLG Life Tech*, and *Zobay*.[3]

Plaintiffs also respectfully request an extension of time to serve Defendant Meteora to ten (10) days after the date on which this Court grants the Motion and enters the proposed Order.

## II.    STATEMENT OF FACTS

### A.  Defendant Meteora

Defendant Meteora is an unincorporated association whose members are individuals or entities that direct and control the development, deployment, and operation of Meteora. First Amended Complaint, ECF No. 37 (the "FAC"), ¶ 28. Its members include, but are not limited to, Defendant Chow, Defendant DLL, and non-parties Ming Yeow, Zhen Hoe Yong, Siong Ong, Raccoon Labs, and Block Raccoon. *Id.*

Meteora is the successor to Mercurial Finance, which was co-founded in 2021 by Defendant Chow, non-parties Ming Yeow and Siong Ong, and others. *Id.* Following the collapse of Alameda Research and FTX, Mercurial Finance rebranded as Meteora under the leadership of Defendant Chow starting in December 2022. *Id.* Meteora maintains a public website at https://www.meteora.ag/. *Id.*

Defendant Chow is Meteora's co-founder and recent-former CEO. FAC ¶ 27. Prior to his public resignation on February 16, 2025, Chow held primary control over and responsibility for the operations of Defendant Meteora, including but not limited to the operation of Meteora on the Solana blockchain and the provision of related services by the "Meteora team." *Id.* Defendant

---

[3] *See Zobay v. MTN Grp. Ltd.*, No. 21 CIV. 3503 (CBA)(VMS) (E.D.N.Y. Mar. 6, 2025), ECF No. 208 (Amon, J., adopting report and recommendation on alternative grounds, authorizing service on U.S. counsel under CPLR § 308(5)); *In re GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262 (S.D.N.Y. 2012) (Kaplan, J.) (authorizing alternative service via counsel).

Chow operated and controlled Meteora from New York continuously through at least February 16, 2025. FAC ¶ 28.

Defendant DLL is an entity incorporated on March 8, 2021 in the British Virgin Islands. FAC ¶ 29. DLL has two Directors: Jupiter co-founders Ming Yeow and Siong Ong. *Id.* DLL automatically received a portion of the user fee revenue from every trade executed on the Meteora platform, including the fraudulent $HAWK trades, and therefore directly profited from the artificially inflated trading volume generated during the pump-and-dump window. FAC ¶¶ 158-159. This profit structure aligned DLL's economic incentives with the continuation of high-volume launch events regardless of investor harm. FAC ¶ 160.

Defendants Chow, Meteora, and DLL provided and enabled the technical environment necessary for the fraud to succeed. FAC ¶ 151. Chow exercised supervisory authority over Meteora and its front-end safety representations, making him personally responsible for the misleading "Permanently locked" indicator displayed during the $HAWK launch. FAC ¶¶ 153-154.

The Meteora platform advertised "permanently locked liquidity" and displayed locked-liquidity badges on the $HAWK trading pools—a safety indicator that represented to investors that the funds backing the token's trading market could not be drained, and that their money was safe. FAC ¶¶ 154, 253. Despite that representation, $HAWK liquidity was withdrawn in coordinated transactions within minutes of launch, draining millions from the pool. FAC ¶¶ 155, 260. The removal of supposedly "locked" liquidity could not have occurred unless the lock mechanism never existed, was disabled, or was circumvented through platform-level assistance. FAC ¶ 156. The liquidity-removal transactions required interaction that would not have been possible for ordinary users relying solely on Meteora's public interface and could only have been

4

executed by actors with full knowledge of how the trading pool was configured and with administrative access to Meteora's infrastructure. FAC ¶¶ 266, 269.

The $HAWK fraud did not occur in isolation. The FAC alleges that it was an iteration of a repeating pattern executed through the same actors, the same crypto wallets, the same vulnerabilities, and the same Solana-based infrastructure. FAC ¶ 292. Blockchain forensics reveal that $HAWK was structurally identical to three schemes (at least $LIBRA, $M3M3, and $AIAI), each of which launched on the Meteora platform and collapsed within hours after insiders removed liquidity. FAC ¶ 293.

The wallet clusters that funded the $HAWK 'sniper' wallet had transactional histories linking them directly to those other schemes. FAC ¶¶ 245-247, 295. Defendant Chow is a named defendant in separate litigation arising from the $LIBRA fraud concerning his central role in overseeing Meteora during multiple such events. FAC ¶ 301.

Together with the other Defendants, Chow, Meteora, and DLL "formed an integrated enterprise capable of executing a highly orchestrated pump-and-dump scheme targeting non-sophisticated retail investors." FAC ¶ 181.

### B. Plaintiffs' Service Efforts

Plaintiffs have undertaken diligent efforts to serve Defendant Meteora through traditional means, all of which have proven impracticable due to the association's defined structural characteristics.

Plaintiffs attempted to effect personal service on Defendant Chow as a means of serving Meteora through one of its members. On January 23, 2026, a process server attempted service at Chow's last known New York address, 110 E 7th St, Apt 19, New York, NY 10009. An individual

5

at the residence stated that Chow had moved, and the summons was returned unexecuted. Decl. ¶ 5; Ex. D.

On March 4, 2026, Plaintiffs' counsel sent correspondence to Cahill Gordon & Reindel LLP ("Cahill"), counsel of record for Defendant Chow in this action, and of Goodwin Procter LLP ("Goodwin"), counsel of record for Defendant DLL in this action. Decl. ¶ 6; Exs. A, B. Plaintiffs' counsel requested that each firm: (a) state whether it was authorized to accept service of process on behalf of Defendant Meteora; (b) identify an authorized agent for service; and (c) provide a current address where Defendant Meteora could be served. *Id.*

On March 11, 2026, counsel for Defendant DLL responded to Plaintiffs' request that DLL accept service on behalf of Meteora. DLL's counsel refused, taking the position that Meteora is not a legal entity but rather a decentralized software protocol—and therefore cannot be sued. Decl. ¶ 7; Ex. B. Counsel for Defendant Chow responded shortly after midnight on March 12, 2026, joining in DLL counsel's position and likewise declining to accept service on Meteora's behalf. Decl. ¶ 8; Ex. A.

## III.   LEGAL STANDARD

### A.  The Statutory Chain: FRCP 4(h)(1)(A) to General Associations Law § 13 and CPLR § 308(5)

Service on an unincorporated association within the United States is governed by FRCP 4(h)(1)(A), which authorizes service "in the manner prescribed by Rule 4(e)(1)." Rule 4(e)(1) incorporates "state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located." In New York, General Associations Law § 13 governs service on unincorporated associations by authorizing service upon the association's president or treasurer, with such service made in the manner provided for service of a summons

6

on a natural person under CPLR § 308. Where prescribed methods prove impracticable, CPLR § 308(5) authorizes court-ordered alternative service.

This is thus a domestic service chain. Service is complete under New York law when counsel receives the documents within the United States. *Zobay*, ECF No. 208; *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 700 (1988).

### B.  CPLR Section 308(5)

Where service is impracticable under CPLR Sections 308(1), (2), and (4), Section 308(5) authorizes service "in such manner as the court, upon motion without notice, directs." The court must find: (1) that conventional service is impracticable; and (2) that the proposed alternative is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

Impracticability does not require exhaustion of every conceivable method, nor does it require a showing of impossibility. *Freeman Giuliani v. Giuliani*, No. 24-CV-06563 (LJL), 2024 WL 5054913, at *2 (S.D.N.Y. Dec. 10, 2024).

## IV.   ARGUMENT

### A.  Plaintiffs Adequately Allege Capacity

Capacity to sue or be sued for entities other than individuals and corporations is "determined by the law of the state where the court is located." Fed. R. Civ. P. 17(b)(3). Under New York law, an unincorporated association may be sued through its president or treasurer. CPLR Section 1025. Alternatively, Meteora may be sued in its common name under Rule 17(b)(3)(A) as "a partnership or other unincorporated association" to enforce a substantive right existing under the United States Constitution or federal laws, including the Securities Act of 1933.

7

The FAC alleges that Meteora's members include Defendant Chow, Defendant DLL, and identified non-parties who collectively direct, develop, deploy, and operate Meteora. FAC ¶ 28. These are individuals and entities who co-founded the enterprise, operated its trading platform and Dynamic AMM system, exercised supervisory authority and made representations about safety, and extracted user fees from every trade on the platform. FAC ¶¶ 27-29, 151-160.

The FAC further alleges that Meteora executed at least three other structurally identical schemes. FAC ¶¶ 292-293. Together with the other Defendants, Meteora's members "formed an integrated enterprise capable of executing a highly orchestrated pump-and-dump scheme targeting non-sophisticated retail investors." FAC ¶ 181.

The leading federal authority is *CFTC v. Ooki DAO*.[4] Judge Orrick held that a blockchain-based trading platform had the capacity to be sued, rejecting the argument that suing it was "akin to suing any other technology." *Id.* at *4. There, the defendant was alleged to have been "structured intentionally to render its activities 'enforcement proof,' including by erecting significant obstacles to traditional service of process." *Id.* at *1.

Courts have consistently reached the same result. *Houghton*, 2024 WL 5154071, at *1, 8. (authorizing alternative service on Compound DAO notwithstanding entity-status dispute; finding it would be "inequitable and inefficient" to allow the entity to avoid service given the "secretive nature of [the] enterprise"); *Samuels v. Lido DAO*, No. 23-CV-06492-VC, 2024 WL 4231598 (N.D. Cal. June 27, 2024) (similar); *Samuels*, 757 F. Supp. 3d at 961 (on subsequent motion to dismiss, expressly rejecting the "autonomous software" defense: "Lido's alleged actions are not those of an autonomous software program– they are the actions of an entity run by people").

---

[4] *CFTC v. Ooki DAO*, No. 3:22-cv-05416-WHO, 2022 WL 17822445 (N.D. Cal. Dec. 20, 2022).

Meteora is an even more suitable candidate for service than *Ooki DAO*. The FAC identifies by name the individuals who controlled the entity, the corporate entities affiliated with it, and the specific operational role each played: Chow maintained a domestic operational presence in New York, overseeing Meteora and its safety representations while playing an integral role in the fraud; DLL extracted user fee revenue from every trade; and pseudonymous wallet operators executed liquidity withdrawals requiring administrative access to Meteora's infrastructure.

Two of Meteora's alleged members, Chow and DLL, are named Defendants who have appeared in this action. The question before this Court is not whether Meteora's capacity will ultimately survive a dispositive motion; it is whether the FAC's allegations are sufficient to warrant alternative service so that Meteora receives notice. They are. To the extent that refusal to accept service rests on an assertion that Meteora is not a legal entity, that objection conflates capacity with merits. As Judge Orrick explained, the question on a service motion is whether the plaintiff has sufficiently alleged that the entity has capacity to be sued—not whether the entity will ultimately be held liable. *Ooki DAO*, 2022 WL 17822445, at *5. The court resolved that threshold question and found capacity adequately alleged, while deferring the distinct merits question of statutory liability. *Id.* at *5–8.

### B.  This Court Should Authorize Alternative Service on Defendant Meteora

#### 1.  Conventional Service Is Impracticable

The impracticability of traditional service on Meteora is structural, not a product of insufficient effort. Alternative service under these circumstances is "neither a 'last resort' nor 'extraordinary relief.'" *In re GLG Life Tech Corp.,* 287 F.R.D. at 265. And where a defendant's own organizational choices are what make conventional service impracticable, the defendant receives less protection from the rules of service, not more. *See Ooki DAO,* 2022 WL 17822445,

at *10–11; *In re GLG Life Tech*, 287 F.R.D. at 267 (service through counsel was "far from whimsical and was occasioned to some degree by the recalcitrance of the company").

Under General Associations Law § 13, service on an unincorporated association is made upon the association's president or treasurer in the manner provided for service on a natural person under CPLR § 308. Meteora has no registered agent for service of process and has designated no person or entity to accept service on its behalf. The only counsel in contact with Meteora's alleged members in this case, counsel of record for co-Defendants Chow and DLL, have affirmatively refused to accept service on Meteora's behalf. Decl. ¶¶ 7–8; Exs. A, B.

Meteora has designated no president or treasurer under General Associations Law § 13, and no other person has been identified as authorized to accept service on its behalf. The only member who served in a functionally equivalent role, Defendant Chow, Meteora's co-founder and former CEO, is no longer at his last known address and is represented by his counsel to be outside the United States. FAC ¶¶ 27–28; Decl. ¶ 5; Ex. D. There is accordingly no identified individual on whom service could be made under CPLR § 308(1) (personal delivery), § 308(2) (leave-and-mail at the actual dwelling or place of business), or § 308(4) (affix-and-mail at the actual dwelling or place of business). Service under each of these provisions is impracticable.

Consider *Ooki DAO*, where the court found the "designated agents or individuals" required for conventional service simply do not exist and alternative service was authorized.[5] *See also Cargill Fin. Servs. Int'l, Inc. v. Barshchovskiy*, No. 24-CV-5751, 2024 WL 4240998, at *6 (S.D.N.Y. Sept. 19, 2024) ("...[C]ourts have been clear that actual prior attempts at service are not required[;]" impracticable where "there was no address at which Defendant could be served" and plaintiff was "not required to make an actual attempt to serve Defendant at a nonexistent address");

---

[5] *Ooki DAO*, 2022 WL 17822445, at *9.

10

*Freeman Giuliani*, 2024 WL 5054913, at \*2 (impracticability "does not require satisfying due diligence, or even showing that actual prior attempts to serve a party under each and every method provided in the statute have been undertaken").

### 2. Plaintiffs' Proposed Methods Are Reasonably Calculated to Give Meteora Actual Notice

Plaintiffs propose three methods of alternative service, each of which independently satisfies the *Mullane* standard and which collectively make it virtually certain that Meteora will receive actual notice of this action.

First, Plaintiffs propose to serve Meteora by emailing copies of the Summons, the FAC, and this Court's Order to Samson Enzer of Cahill, counsel of record for Defendant Chow, and to Charles A. Brown of Goodwin, counsel of record for Defendant DLL. Counsel and their clients are not strangers to this litigation. They are appearing counsel of record for appearing co-Defendants who are alleged members of Meteora. They have corresponded with Plaintiffs' counsel about service on Meteora as recently as March 11–12, 2026. They have taken substantive legal positions on Meteora's status. Plaintiffs' counsel confirmed that both email addresses are actively monitored: on March 11, 2026, Mr. Brown of Goodwin responded to Plaintiffs' service inquiry at 6:52 PM, and Mr. Wiley of Cahill responded shortly after midnight on March 12, 2026. Decl. ¶¶ 7–8, Exs. A, B.

Counsel who respond to service inquiries by arguing that Meteora is software and cannot be served plainly have the communication channel necessary to provide notice of this action. In *GLG Life Tech*, Judge Kaplan found it "impossible to imagine" that a corporation's counsel would fail to advise the corporation's own CEO of formal service. 287 F.R.D. at 267. The nexus here is at least as direct: Chow and DLL are not intermediaries who must relay notice to a separate party.

11

Service on counsel for Chow and DLL therefore places the summons in the hands of the very persons through whom Meteora would be served under the statute. Indeed, the due process threshold for service through counsel is not high: Judge Kaplan observed that it "could be satisfied, for that matter, by serving a carnival barker" if the relationship to the defendant were sufficient to give notice. *NYKCool A.B. v. Pac. Int'l Servs., Inc.*, No. 12-cv-5754 (LAK), 2015 WL 998455, at *5 (S.D.N.Y. Mar. 5, 2015)*.* Appearing counsel of record for a defendant's own members far exceeds that standard.

*Zobay* is on point and arises from the same courthouse. Judge Amon adopted Magistrate Judge Scanlon's order authorizing service on foreign entities via U.S. counsel under CPLR § 308(5), holding that New York law "clearly permits" court-ordered alternative service via counsel and that such service is "complete when counsel receive the operative legal papers."[6] *See also Doe v. Hyassat*, 337 F.R.D. 12, 17 (S.D.N.Y. 2020) (collecting cases authorizing service through counsel under New York law); *In re GLG Life Tech Corp.*, 287 F.R.D. at 267 (authorizing service via counsel where there was "adequate communication between the individual and the attorney"); *NYKCool*, 2015 WL 998455, at *3-4 (service on counsel satisfies due process where counsel has been actively litigating on the defendant's behalf).

Thus, courts have authorized service through counsel under circumstances presenting a less direct nexus than exists here. In *GLG Life Tech*, the court authorized service on an unserved individual through counsel for a co-defendant corporation. Here, the proposed service places the summons in the hands of attorneys who are in active communication with Chow and DLL, the very persons through whom Meteora would be served as an unincorporated association under CPLR § 1025 and General Associations Law § 13. The alternative method thus tracks the statutory

---

[6] *Zobay,* ECF No. 208 (applying CPLR § 308(5); citing *Invar Intl., Inc. v. Zorlu Enerji Elektrik Uretim Anonim Sirketi*, 86 A.D.3d 404 (1st Dep't 2011)).

mechanism, reaching Meteora through its own alleged members even though conventional delivery to them is impracticable.

Second, Plaintiffs propose to email copies of the Summons, FAC, and Order to meteora_support@meteora.ag, the email address designated in Section 15 of Meteora's own Terms of Service as the address for providing notice to the entity. Decl. ¶ 10; Ex. C. *See Ooki DAO*, 2022 WL 17822445, at *10-13 (authorizing service via the DAO's online communication channels); *Dellone v. Coinbase, Inc.*, No. 1:23-CV-01408-ADA-HBK, 2023 WL 8646925, at *2 (E.D. Cal. Dec. 14, 2023) ("Courts around the U.S. have specifically authorized service by electronic message combined with posting a copy of the summons and complaint on a public webpage").

Third, Plaintiffs propose that this Court direct Defendant Chow, through his counsel at Cahill, to publish a post (the "Service Post") on Meteora's governance forum at https://proposals.meteora.ag/ (the "Governance Site") and to ensure that the Service Post remains pinned to the top of the forum for at least sixty (60) days. Plaintiffs further propose that the Court direct Chow to post the same documents on Meteora's public Discord server at discord.gg/meteora. The Governance Site is the platform through which Meteora's members participate in governance decisions and receive notice of matters affecting the protocol. Decl. ¶¶ 11-12; Exs. E, F. The Governance Site is not dormant. As of the March 17, 2026 screenshots, the forum had 1,947 members, 9 active users in the preceding seven days, and user activity as recent as March 15, 2026. Decl. ¶ 11; Exs. E, F. Similarly, Meteora's Discord server shows active daily participation. Decl. ¶ 13. Defendant Chow himself used the Governance Site to post proposals and communicate with Meteora's members and community. Decl. ¶ 12; Ex. G.

13

Because Chow has historically used the Governance Site in an administrative capacity, directing him to publish and pin the Service Post is the method most likely to reach Meteora's unidentified members and principals. As the *Ooki DAO* court recognized, "[c]ourts … cannot be blind to changes and advances in technology," and where a defendant's "chosen and preferred method of communication" is an online forum, service through that channel is proper. 2022 WL 17822445, at *10–11 (quoting *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1017 (9th Cir. 2002)).

The Discord server is an additional public channel where Meteora's community communicates. *See Samuels*, 2024 WL 4231598, at *2 ("service on a DAO by posting to the Governance Forum is reasonably likely to put the DAO on notice of ongoing litigation"); *Ooki DAO*, 2022 WL 17822445, at *1 (approving combined methods including forum posting as "reasonably calculated to give actual notice").

Collectively, these methods ensure that notice will reach Meteora through every available channel: through the attorneys who represent its members in this action, through the entity's own email address, and through the public platforms where its members govern and communicate, with Defendant Chow himself directed to publish and pin the service documents on the very forum he used to communicate with Meteora's community.

## C. The Hague Convention Does Not Apply

To the extent that Chow and DLL are presently abroad, no proposed method of service requires the transmittal of documents abroad. Service on domestic counsel at domestic law firms is complete under New York law when counsel receives the documents. *Volkswagenwerk*, 486 U.S. at 700 (Hague Convention applies only when the forum state's internal law requires "transmittal of documents abroad"); *Zobay* (holding that service on U.S. counsel under CPLR §

14

308(5) is a domestic act that does not implicate the Hague Convention); *GLG Life Tech*, 287 F.R.D. at 265 (same).

Because Plaintiffs' motion rests on the domestic service chain, no foreign transmittal is required and the Hague Convention has no application.

### D.    Plaintiffs' Time to Serve Defendant Meteora Should Be Extended

Rule 4(m) provides a 90-day period to serve the summons and complaint. If that period expires before service is effected, the Court must extend the time for service where the plaintiff shows "good cause for the failure." Id. Even absent good cause, the Court has discretion to extend the service period. *Buon v. Spindler*, 65 F.4th 64, 75 (2d Cir. 2023).

Good cause exists here. The 90-day service period under Rule 4(m) runs from the filing of the FAC on December 18, 2025, making the deadline March 18, 2026. Plaintiffs attempted personal service on Defendant Chow on January 23, 2026, which was unsuccessful. On March 4, 2026, Plaintiffs' counsel wrote to counsel for Defendants Chow and DLL requesting that they accept service or identify an authorized agent. Both declined on March 11-12, 2026. The delay is attributable to the fact that Meteora has no registered agent, no physical address, and no person willing to accept service on its behalf. These are structural characteristics of the defendant, not deficiencies in Plaintiffs' efforts.

The discretionary factors also favor extension.[7] Defendant Meteora has actual notice of this action through its members' counsel. Defendants have impeded service by maintaining that Meteora cannot be sued. And a brief extension to complete alternative service causes no prejudice.

---

[7] *See Patel v. Clane Gessel Studio*, No. 1:22-CIV-10964-GHW-RFT, 2023 WL 8280498, at *3 (S.D.N.Y. Nov. 30, 2023) (identifying four factors for discretionary extensions under Rule 4(m)).

15

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant the Motion, authorize alternative service on Defendant Meteora by the methods described herein, and extend Plaintiffs' time to serve Defendant Meteora to ten (10) days after the date of the Court's Order. The regulatory and compliance implications of permitting a revenue-generating business to avoid service by claiming it does not legally exist are significant, and this Court should not be the first to credit that position.

Respectfully submitted,

**BURWICK LAW, PLLC**

By: */s/ Max Burwick*
Max Burwick
1 World Trade Center, *84th Fl.*
New York, NY 10007
(646) 762-1080
max@burwick.law

*Co-Lead Counsel for Plaintiffs and*
*Proposed Class*

16